UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

       Plaintiff,

       v.

ALBERT BRUCE NEAL,

       Defendant.

Criminal No.  07-0174-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

    On May 1, 2007, defendant Albert Bruce Neal was indicted for possession of a firearm in violation of 18 U.S.C. § 922(g).  Defendant moved to suppress evidence of the firearm [12] and the government filed a response [13].  Testimony and oral argument on the motion were heard on September 24, 2007.  Post-hearing briefs were filed by the defendant [17] and the government [18].[1]  After considering the arguments and evidence before the court, the defendant's motion is denied.

---

[1] Defendant has not objected to the government's three-week-late filing.  The court finds that accepting the brief does not prejudice the defense because it was due after defendant's brief, and largely reiterates the government's original response.

1  - OPINION AND ORDER

I.     BACKGROUND

Defendant's indictment arose from a vehicle stop performed by City of Portland Police Officer Jim DeFrain. DeFrain and defendant's investigator Brian Warner testified at the hearing. The court observed both witnesses and found them to be credible. The following findings of fact are based on the testimony and evidence presented.

Around 7:00 p.m. on March 4, 2007, DeFrain was on patrol near Pappy's Bar & Grill in Portland, Oregon. He recognized a Ford Escort parked near the bar on N.E. Multnomah Street. DeFrain had previously stopped the car after seeing it leave the area of Pappy's, running its license plate number on his in-car computer, and finding that one of the registered owners had an outstanding felony warrant. During the previous stop, Neal was the sole occupant of the Ford. DeFrain asked him about Mercadisa Dawes, the other registered owner. Neal intimated that Dawes was his girlfriend, and that they lived together, but that she was at home. DeFrain asked Neal to tell her that she had an outstanding felony warrant. Although DeFrain believed that he used the pretext of a traffic infraction to initiate the vehicle stop, he did not issue a citation.

After his initial encounter with the Neal, DeFrain saw the car parked in the vicinity of Pappy's on several other occasions. On March 4, 2007, DeFrain saw the Ford, ran the license plate number again, saw that the warrant for Dawes was still outstanding, and decided to wait and see if she emerged from the bar. He parked his marked police car on the south side of N.E. Multnomah Street, approximately one quarter of a block west of N.E. 81st Avenue. The Ford was parked on the same side of N.E. Multnomah Street, approximately a third of a block east of N.E. 81st Avenue. DeFrain's car was about 150 feet west of the Ford, which was in turn about 224 feet west of the bar. Pappy's, located on the east side of N.E. 82nd Avenue, is directly across from the intersection of N.E. Multnomah Street eastbound with N.E. 82nd Avenue. From

his vantage point, DeFrain could see the entrance to Pappy's, which opens to the west towards N.E. Multnomah Street.

Although it was overcast and around fifty degrees Fahrenheit, it was not raining, and visibility was good that evening. The intersection on N.E. 82nd Avenue in front of Pappy's was well lit, but there were few lights westbound along N.E. Multnomah Street towards DeFrain's position. DeFrain knew from his computer search that Dawes was a forty-two-year-old black female, five feet two inches tall and 136 pounds, with black hair and brown eyes. He did not access her booking photo at that time, and did not see the photo until it was presented to him at the hearing in this matter.[2] The photo shows that Dawes has a dark complexion. DeFrain saw a man and woman emerge from the bar and begin to walk towards him. They walked directly across N.E. 82nd Avenue, and DeFrain said that he was able to identify Neal at that distance. The woman, who was wearing a coat, walked arm-in-arm with Neal, and he put his arm around her in a way that suggested intimacy to DeFrain. She took the driver's seat in the Ford, while Neal sat in the passenger's seat. At this point, DeFrain concluded that the woman was Dawes, and decided to stop the car. However, as DeFrain eventually discovered, the woman was not Dawes. She was Cowanda Matthews, a thirty-nine-year-old white female, five feet five inches tall and 150 pounds.

The Ford pulled out and headed west on N.E. Multnomah Street. DeFrain activated his car's overhead lights and made a u-turn to follow the car as it passed him. When he activated the lights, the Ford slowed to between five and seven miles per hour, but continued to travel down N.E. Multnomah Street. DeFrain called for backup. The car made a left turn onto N.E. 79th Street and proceeded for almost another block before stopping near the end of the block at N.E.

---

[2] DeFrain testified that not all cars with computers can call up booking photos, and he could not recall if the car that he was driving even had the necessary equipment.

3 - OPINION AND ORDER

Holladay Street. DeFrain approached the driver's side door and spoke with the woman. He referred to her as "Mercedes," the nickname that he had previously heard Neal use when discussing Dawes. The woman told him that she was not Dawes, but had no identification. DeFrain believed that she was a light-complexioned black woman. DeFrain placed Matthews in his car and performed a computer search for her records, using a query which identified her as a white female. He found that she had an outstanding misdemeanor warrant and a suspended driver's license. DeFrain then spoke with Neal, who consented to a pat-down search, during which DeFrain found six .38 caliber bullets. DeFrain also found a revolver in the back seat/trunk area during an inventory search incident to impounding the car. Neal was arrested and charged with being a felon in possession of a firearm. Neal seeks to suppress all evidence arising from the vehicle stop.

## II.   DISCUSSION

Evidence gathered in violation of the Fourth Amendment generally cannot be used to prove the guilt of the person whose rights were violated. *Elkins v. United States*, 364 U.S. 206, 221-22 (1960). Passengers in vehicles stopped for investigation are seized within the meaning of the Fourth Amendment. *Brendlin v. California*, 127 S. Ct. 2400, 2407 (2007). The Fourth Amendment requires that investigatory detention of persons by law enforcement be supported by reasonable suspicion. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Investigatory stops of vehicles, like *Terry* stops, must be supported by reasonable suspicion. *United States v. Lopez-Soto*, 205 F.3d 1101, 1104-05 (9th Cir. 2000) (rejecting the argument that the higher probable cause standard should apply). "Reasonable suspicion is formed by 'specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" *Id.* at 1105 (quoting *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir. 1996)). Reasonable suspicion can arise from mistaken factual

4  - OPINION AND ORDER

determinations by an officer, as long as those factual errors are reasonable. *See Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990); *United States v. Mariscal*, 285 F.3d 1127, 1131 (9th Cir. 2002); *Lopez-Soto*, 205 F.3d at 1106 (differentiating factual errors from legal errors).

Here, DeFrain knew from his computer search that Dawes, one of the owners of the car, had an outstanding felony warrant.[3] The combination of an outstanding felony warrant with a reasonable belief that Dawes was driving the car would provide a more than adequate constitutional basis for performing an investigatory stop of the vehicle. *See, e.g.*, *U.S. v. Dorais*, 241 F.3d 1124, 1130-31 (9th Cir. 2001) (investigating a potential misdemeanor by the driver of an otherwise-lawfully-operated car was sufficient to support a stop). Thus, the determinative inquiry is whether Officer DeFrain had a reasonable belief that the driver of the car was Dawes.

There was strong circumstantial evidence supporting DeFrain's conclusion that the woman he saw get into the car was Dawes. Matthews and Dawes are close in age, height, and build. It was cold and the woman was wearing a coat, further masking differences in weight. DeFrain had never seen a photograph of Dawes, so he had no basis to judge whether she had a light or a dark complexion, regardless of her race. The court has inspected the booking photograph taken of Matthews on that evening. While she does not appear to the court to be a black female, it is plausible that she could be misidentified as a light complexioned black female in different lighting conditions than those in the booking area. DeFrain's erroneous conclusion about Matthews' race was reasonable, and the misidentification cases cited by defendant here are largely inapposite. For example, *United States v. Lopez*, 482 F.3d 1067 (9th Cir. 2007), involved the higher probable cause standard, not reasonable doubt, and involved only a "mere

---

[3] This initial investigation of the vehicle through its license plate number does not implicate any rights protected by the Fourth Amendment. *See United States v. Diaz-Castaneda*, 494 F.3d 1146, 1151-52 (9th Cir. 2007).

5  - OPINION AND ORDER

resemblance to a general description." *Id.* at 1073 (quoting *Grant v. City of Long Beach*, 315 F.3d 1081, 1088 (9th Cir. 2002)). Here, there was significant resemblance between Matthews and the written description of Dawes.

The most probative evidence supporting DeFrain's conclusion about the identity of the woman was derived from her interactions with Neal and the fact that she got into the driver's seat of the Ford. DeFrain's knowledge that Neal and Dawes lived together and were romantically involved is crucial. The behavior of the couple that emerged from the bar was akin to that of a couple. A further inference that the woman was Dawes could reasonably be drawn from the fact that she drove the car, something typically done by the owner of a car. These are not the only inferences that could be drawn, but in the totality of the circumstances they are reasonable ones.

Defendant unsuccessfully attacks DeFrain's credibility by pointing to several purported inconsistencies. First, defendant argues that DeFrain did not mention the previous stop as part of his arrest report. While a more complete report at the time of arrest, laying out all of the bases for suspicion would be optimal, nothing in DeFrain's recollection was inconsistent with his later report. Second, defendant points to language in the report that says the male passenger was "later identified" as Neal, to demonstrate that DeFrain was not able to identify Neal prior to the stop. The court does not read this language to mean that DeFrain was unable to identify Neal as he walked out Pappy's. The more reasonable interpretation is that the "later identification" refers to verifying Neal's identity by seeing him up-close or checking his driver's license. Finally, defendant asserts that DeFrain must have surmised that Matthews was not black because he entered a computer query searching for a white woman. That same query included Matthews' date of birth, a piece of information that she must have provided to DeFrain. It is equally or more plausible that DeFrain asked her for her race as he entered the query. Each of these instances of ambiguity demonstrates, at best, a place where the parties could have better

6 - OPINION AND ORDER

questioned DeFrain during the hearing. There is no basis to conclude that DeFrain lacked credibility. The facts known to DeFrain on March 4, 2007, combined with his observations on that evening were sufficient to create a reasonable suspicion that Dawes was driving the Ford.

### III.   CONCLUSION

For the foregoing reasons, defendant's motion to suppress [12] is DENIED.

IT IS SO ORDERED.

DATED this  3   day of December, 2007.

    /s/ Ancer L. Haggerty
Ancer L. Haggerty
United States District Judge

7 - OPINION AND ORDER